UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Karen J., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 18 CV 50205 |
| | ) | Magistrate Judge Iain D. Johnston |
| Andrew Saul, | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

# **MEMORANDUM OPINION AND ORDER**[1]

Plaintiff, who is 61 years old, is seeking Social Security disability benefits based on a long-standing back problem that has required three lumbar fusion surgeries. In 2004, plaintiff had her first fusion surgery. At that time she was working as a shipping clerk, a job she held since 1990. R. 203. After the surgery, plaintiff did not work for a year or two. In 2006, she began working as a nail technician in a beauty spa. But her back problems eventually worsened, leading to a second fusion surgery in 2011. After this surgery, plaintiff started in a new job as an assembler in an automotive plant. She worked several more years until the back problem again re-emerged. In the fall of 2014, she had a third lumbar fusion surgery. Plaintiff then stopped working and applied for benefits.

The doctor who treated plaintiff's back problem throughout this time was Dr. Michael S. Roh, an orthopedist at the Rockford Spine Center. He performed all three surgeries and treated

---

[1] The Court will assume the reader is familiar with the basic Social Security abbreviations and jargon.

1

plaintiff for over a decade. After the third fusion surgery, Dr. Roh made two short statements in 2015 about whether plaintiff was able to work. These two statements are central to this appeal.[2]

As a preliminary observation, it is fair to say that both statements, however they might be interpreted, are conclusory with no accompanying analysis. The first statement was handwritten on a prescription note pad, and was dated January 21, 2015. Here is a screenshot:



R. 523. The handwriting is a little difficult to read, but the main assertion is that plaintiff could return to "light duty for 2 weeks" and then afterwards could work "full duty – no restrictions." In other words, this was essentially a clean bill of health.

---

[2] Dr. Roh made two earlier statements in 2014, but everyone agrees these statements provide no insight into Dr. Roh's thinking or to the issues in this case.

The second statement was made approximately eight months later. It was not on a prescription note pad like the first opinion but was instead a sentence taken from Dr. Roh's treatment notes for plaintiff's visit on September 10, 2015. Dr. Roh wrote that plaintiff reported that she was having "a difficult time bouncing back from her past surgery" and was "experiencing a great deal of persistent lower lumbar back pain and stiffness as well as bilateral hip and buttocks pain and tightness" and that this pain had "progressively gotten worse over the last year." R. 426. At the end of these notes, Dr. Roh wrote the following, the first sentence being the key one:

> The patient also has obtained an attorney and is applying for long term disability and I do think she would be a good candidate for this
>
> We discussed the possibility of becoming established with Dr. Dahlberg for more chronic pain management and the patient stated that she would consider this as well.
>
> I told her to contact us if she has any problems, questions or concerns or if there is any way we can help her out, but again I do not think her current symptoms would warrant any type of surgery and the patient stated herself that she was not looking for anymore surgery.

R. 427.

To summarize, the first statement was that plaintiff could work with no restrictions, and the second, given eight months later, was that she would be a "good candidate" for long-term disability. At issue is how to reconcile these seemingly contrary conclusions. Plaintiff's theory is that her condition materially changed from January to September 2015 and that Dr. Roh changed his opinion to reflect this fact. The ALJ's theory, discussed further below, is more complicated. Regardless of their theories, both sides admit, either explicitly or implicitly, that some doubt or ambiguity exists about exactly what Dr. Roh believed.

The Court will pause the discussion here to make a painfully obvious observation. In reading the initial round of briefs, the Court found itself repeatedly asking the following

3

question: why didn't someone—either the ALJ or plaintiff and her counsel—contact Dr. Roh to get a clarification or updated opinion? If such an attempt had been made, then we might have avoided the need to wrestle with the type of arguments now being raised. A lot of energy has gone into speculating what Dr. Roh thought based on a few vague snippets of text. It would have been much easier to hear from him directly. In their initial briefs, the parties did not squarely confront this question. Therefore, after the Court was well into the drafting process, it decided to order supplemental briefing. At the end of this opinion, the Court will discuss these briefs. However, to preview that discussion, the Court did not find that either side presented any new arguments that would change the Court's analysis based on the initial round of briefs.

On May 31, 2017, the ALJ found that plaintiff was capable of doing sedentary work and could return to her past job as a nail technician, a job plaintiff did from 2006 to 2011. However, the ALJ concluded that plaintiff was not capable of returning to her most recent job as an automotive assembler given—in the ALJ's words—"her extensive lumbar surgical history with coexisting cervical pathology." R. 28. The ALJ discussed Dr. Roh's two opinions in separate paragraphs, giving the January 2015 statement "great weight" and the September 2015 statement "minimal weight." R. 27.

In this appeal, plaintiff raises multiple arguments for remand, but the main one is that the ALJ's analysis of these two opinions was flawed. More specifically, plaintiff argues that the ALJ should have given "controlling weight" to the second opinion under the treating physician rule, which was applicable to this case. *See* 20 C.F.R. §404.1527(c)(2); *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014). But the gist of this argument is that the ALJ cherrypicked Dr. Roh's earlier opinion because it supported the ALJ's pre-selected outcome and then dismissed the later opinion, despite being from the same doctor.

4

In considering these arguments, this Court must conduct a critical review of the evidence. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support an ALJ's decision, this Court will not affirm that decision if the ALJ did not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build the logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19 (N.D. Ill. Oct. 29, 2014). As explained below, the Court agrees with plaintiff that the ALJ's analysis was illogical and inconsistent and, therefore, lacked the requisite logical bridge.

The ALJ first analyzed the January 2015 opinion, giving it "great weight" based on the following explanation:

> Dr. Roh is the claimant's treating spine surgeon, and he has longitudinal familiarity with her conditions. This opinion is therefore given great weight in concluding that, about four months postoperatively, the claimant regained capacity for sustained work activity. However, Dr. Roh did not specify what he meant by "light" work activity, and as he is a surgeon (and not a vocational specialist), and this does not necessarily suggest that he intended to release her to "light" work as that term is described in the *Dictionary of Occupational Titles* (DOT). Similarly, while he reported that she could return to work "unrestricted", he was likely considering the claimant's past work (which she described at approximately the light level of exertion). It is unlikely that he was suggesting the claimant, who has undergone three extensive lumbar procedures, would soon be able to perform heavy or even very heavy work activities on an ongoing and consistent basis.

R. 27 (citations omitted). There is a lot going on in this paragraph and it calls for a careful reading. The paragraph has two parts. In the first part, the ALJ reached the general conclusion that the opinion deserved great weight because Dr. Roh had "longitudinal familiarity" with plaintiff's condition. This part of the analysis is straightforward, if a bit conclusory. If the ALJ had stopped here, her analysis would have been clear.

But in the second half of the paragraph, starting with "However," the analysis becomes more convoluted and speculative. If this were a magic trick, this is where you would want to pay

5

close attention. In this portion of the analysis, the ALJ engaged in a creative re-interpretation. Dr. Roh stated that, after an initial two-week period of light duty work, plaintiff could work "full duty – no restrictions." The latter phrase is unequivocal, with no provisos or caveats. Notwithstanding this plain language, the ALJ asserted that what Dr. Roh "likely" was trying to communicate was that plaintiff could only do light work. The ALJ's reasoning is not easy to follow, but the main rationale was simply the ALJ's gut-instinct conclusion that plaintiff's "three extensive lumbar procedures" by themselves would clearly preclude her from doing heavy or very heavy work. In short, Dr. Roh's opinion was unreasonable on its face. However, rather than relying on this conclusion to reject the opinion, the ALJ decided to re-write Dr. Roh's statement. Then having done so, the ALJ gave this newly revised statement great weight. The question arises as to why the ALJ went to all this effort. Plaintiff offers a reasonable explanation, which is that the ALJ knew that she had no other medical opinion supporting her analysis and wanted to make it appear that Dr. Roh's opinion supported her decision.

Turning to the September 2015 opinion, the ALJ gave the following explanation for rejecting it:

> This statement is on an issue reserved to the Commissioner, and it is given minimal weight. It is conclusory, not providing specific limitations, and it is unclear what he intended to convey. He could well have intended to suggest that the claimant would have difficulty sustaining her immediate past work as an automotive assembler, which would be consistent with the restrictions described in the above RFC.

R. 27. As with the first opinion, the ALJ engaged in a two-step analysis. In the first part, the ALJ stated that Dr. Roh's opinion was being rejected based on several straightforward rationales (*i.e.* it was vague and conclusory). In the second part, the ALJ again ventured beyond this initial conclusion and engaged in speculations about unexpressed meanings in the doctor's statement. The obvious tip-off that the ALJ was speculating is the phrase "could well have intended."

According to the ALJ, Dr. Roh may have merely been expressing his belief that plaintiff was unable to work in her last job as an automotive assembler, and that he may still have believed she could work a number of other less demanding jobs, such as working as a nail technician. But this analysis is entirely speculative. The ALJ did not point to any other contextual statement that would reasonably support this inference. Plaintiff goes further and argues that the ALJ's explanation was inherently unbelievable on its face—that is, even accepting that Dr. Roh was a doctor and not a disability expert, it is still unlikely that he would have believed that a person could qualify as disabled only in relation to one specific job.

In sum, after reviewing the ALJ's reasoning, the Court finds that two fundamental problems exist. The first one, already discussed, is that the ALJ re-interpreted the two opinions based on little concrete evidence. Neither opinion contained any textual ambiguity reasonably opening the door to the speculative forays taken by the ALJ. The ALJ's choice of words confirms that she was speculating. She used hedge words, stating that Dr. Roh "was *likely* considering" various unstated facts and "*could* well have intended to suggest" other unexpressed ideas. It might be reasonable to raise questions about precisely what Dr. Roh meant by his statement that plaintiff was a "good candidate" for long-term disability—for example, did he fully understand the disability standard?—but it is clear that this statement was significantly different from his earlier statement that plaintiff could work *any* job with *no restrictions*. Something had changed. As plaintiff notes, Dr. Roh made other statements in these notes confirming that a change had taken place. For example, Dr. Roh discussed with plaintiff the possibility of being treated again by Dr. Dahlberg "for more chronic pain management." R. 427. The ALJ failed to confront this stark disjunction between the two opinions, but instead attempted to paper over it. The ALJ did so by modifying both opinions to bring them closer in line with the

7

ALJ's previously-announced RFC finding. The net effect is that the ALJ moved both opinions, which previously were on opposite ends of a spectrum, more to the center. This created the impression that they were somewhat consistent with each other. But they weren't.

The second major problem with the ALJ's analysis is that the ALJ did not apply the same criteria in assessing these two opinions. *See Murphy v. Berryhill*, 2018 WL 6610287, *4 (N.D. Ill. Nov. 28, 2018 ) ("it is important that ALJs employ the 'same metrics' and the 'same level of rigor' in evaluating multiple opinions"); *Vandiver v. Colvin*, 2015 WL 8013554, *3 (N.D. Ill. Dec. 7, 2015) ("the checklist has its greatest usefulness as a tool for making an apples-to-apples comparison between opinions."). The following chart, which lists the ALJ's rationales, makes this point clear:

| January 2015 Opinion Was Accepted Because: | September 2015 Opinion Was Rejected Because: |
|---|---|
|  | Issue was reserved to the commissioner |
|  | The opinion was conclusory and unclear |
|  | Dr. Roh provided no specific limitations |
| Dr. Roh was the treating spine surgeon |  |
| Dr. Roh had a longitudinal familiarity with plaintiff's conditions |  |

What stands out is that the reasons in each column are different. If the same criteria were being applied, then one would expect that the reasons given in one column would mirror the other. For example, if one opinion were criticized for being conclusory, then the other opinion would be praised for being detailed. If one were based on a longitudinal relationship, then the other would be faulted for being based on a one-time visit. But here, the ALJ did not apply the same criteria.

8

The rationales for each opinion are ships passing in the night. Keep in mind that these two opinions were issued by *the same doctor*. This is not a case where the opinions come from different doctors with different specialties and treatment histories, making it harder to compare them on an even footing.

In particular, it makes no sense to give greater weight to the January opinion based on the rationale that Dr. Roh was a treating physician who had a long-term relationship with plaintiff. This reason applies equally, if not more, to his later opinion. At that point, the treatment relationship was even longer. Dr. Roh did not suddenly become a different person. Likewise, the ALJ's criticisms that the September opinion was on an issue "reserved to the Commissioner" and was "conclusory" also could also be made about the January opinion. The Court cannot discern any difference in the degree of detail between the two opinions. It would not have been unreasonable to conclude that *both* opinions were conclusory because neither one included specific limitations or analyses. But such a rationale would suggest that neither opinion deserved great weight. However, the ALJ inconsistently employed this criterion to reject only one of the two opinions. This is a classic example of cherrypicking.

In its brief, the Government tries to bolster the ALJ's analysis by including a new rationale. The Government argues that there were inconsistencies between Dr. Roh's "good candidate" statement and other evidence in the record. This argument is built on evidence from the time period after Dr. Roh's September 2015 statement, and consists of examination findings from visits plaintiff made to other doctors in March and August of 2016 and then in January 2017. According to the Government, the findings from these visits, such as plaintiff having a full range of motion, were "minimal." Dkt. #17 at 5. But the ALJ did not cite these alleged inconsistencies in the list of reasons for disregarding Dr. Roh's September opinion. So, these

arguments cannot be relied on here. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("the *Chenery* doctrine [] forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced"). Moreover, if the ALJ had intended to rely on the argument that the September 2015 opinion was not supported by Dr. Roh's treatment notes, which again is an argument the ALJ did not make, then the ALJ would have been required to consider whether the same argument undermined the January 2015 opinion.

Having found that a remand is required based on the above argument, the Court need not address plaintiff's second major argument, which is that the ALJ erred in the credibility analysis by failing to consider plaintiff's work history (for example, she returned to work twice after having back surgery and worked for many years over her career) and by misconstruing plaintiff's alleged failure to consistently pursue physical therapy in one instance. Plaintiff argues that Dr. Roh, at the September 2015 visit, did not express much hope that further physical therapy would help given plaintiff's long treatment history. The Court need not further consider these arguments here. On remand, the parties and the ALJ should explore these two issues more fully, as well as all the other related factors in the credibility analysis.

*  *  *

As noted above, each side submitted a supplemental brief in response to this Court's order, which stated as follows:

> In reviewing the briefs, the Court noted that the parties (as well as the ALJ) have debated what Dr. Roh meant in his multiple opinions, and specifically in his September 2015 statement that plaintiff was a "good candidate" for long term disability. The question arises as to why neither plaintiff's counsel nor the ALJ sought to get an updated opinion from Dr. Roh clarifying his views about plaintiff's condition and her possible work limitations. The parties are each ordered to provide a supplemental brief addressing this question. In their briefs, the parties should also address whether a negative adverse inference can be drawn from the fact that plaintiff did not seek an updated opinion. Finally, the parties should reconcile the competing propositions that, on the one hand, an ALJ has an

> independent and affirmative duty to develop the record, and, on the other hand, that a claimant bears the burden of establishing disability and that when a claimant is represented by counsel at the hearing, the claimant is presumed to have presented its best case.

Dkt. #19. This Court ordered supplemental briefs mainly because they might have changed the Court's thinking about how to resolve this case (it turns out that they didn't) but also because they might provide insight into what has been a recurring—and at times, frustrating—problem. This is the scenario where the parties and this Court are forced to debate the meaning of an ambiguous medical opinion, in some cases a short passing comment taken from treatment notes, or to speculate about what might have been revealed if a new opinion had been obtained. *See, e.g., Gloria S. v. Berryhill*, 2019 WL 2435858, *5 (N.D. Ill. June 11, 2019) ("Frustratingly, there is no answer to this question [of what a functional capacity evaluation might have revealed] because plaintiff never got the evaluation done. This would have been an easy way to resolve the ambiguity[.]."). As a matter of judicial efficiency, it would be much easier if these questions were clarified and developed fully at the administrative level. In several cases, the Seventh Circuit has stated that an adverse inference may be drawn when a claimant represented by counsel did not provide a medical opinion.[3] At the same time, as noted above, the Seventh Circuit has recognized that ALJs have a co-existing duty to develop the record and thereby avoid these same problems.

In its supplemental brief, the Government argues that this Court should affirm the ALJ's decision based, in part, on an adverse inference drawn from counsel's failure to get another

---

[3] *See, e.g.*, *Buckhanon v. Astrue*, 368 Fed. Appx. 674, 679 (7th Cir. 2010) (the "appropriate inference" to be drawn from counsel's failure to obtain a medical opinion, or to ask the ALJ to recontact the state-agency doctors, is that counsel had "decided that another expert opinion would not help"); *Halsell v. Astrue,* 357 Fed. Appx. 717, 723 (7th Cir. 2009) ("[T]he ALJ was permitted to assume that Halsell, who has always been represented by counsel, was 'making the strongest case for benefits,' so it was not improper for her to draw a negative inference from the fact that no treating physician opined that Halsell is disabled." ).

opinion from Dr. Roh explaining the arguably ambiguous "good candidate" statement. The Government first argues that the ALJ was not obligated to contact Dr. Roh because the ALJ reasonably concluded that the existing record was sufficiently complete and consistent to render a decision. Dkt. #21 at 1-2 (asserting that the record was neither "incomplete nor inconsistent"). In addition, the Government cites to statistics and details to show that ALJs have very heavy caseloads, the implication being that plaintiffs are better able to obtain any needed medical opinions. The Government's main argument is that counsel purposefully decided not to get an updated opinion from Dr. Roh, or to ask the ALJ to do the same thing, because counsel was making a strategic choice to rely on a potentially weak medical opinion.

In her supplemental brief, filed a few days after the Government's brief, plaintiff first emphatically objects to the Government's insinuation that counsel was "deliberately presenting ambiguous evidence" and trying to game the system. Dkt. # 22 at 1. In fact, counsel filed a separate motion to strike portions of the Government's brief. Dkt. #23. But plaintiff's main argument appears to be, when reduced to its essence, that counsel at the administrative level could not have anticipated that the ALJ would engage in the type of inconsistent analysis that she did. In other words, it was not obvious or clear-cut that an updated opinion was needed.

After considering these arguments, the Court is more persuaded, on balance, by plaintiff's arguments that the facts of this particular case do not make it a good candidate to draw an adverse inference. First, unlike some other cases, such as *Halsell*, the ALJ here did not actually draw an adverse inference or otherwise fault plaintiff for not getting an updated opinion. Second, at the administrative level, plaintiff was represented by different counsel, who died before this appeal was filed, and she is now represented by new counsel. Third, at the administrative level, counsel alerted the ALJ to the existence of Dr. Roh's September 2015

opinion in a pre-hearing brief. It is true that counsel did not further emphasize the opinion at the start of the hearing, but this is not a case where counsel never mentioned the opinion at all with the result being that the ALJ completely overlooked it. Here, the ALJ was well aware of the opinion and discussed it in the decision. Fourth, and perhaps most significant, the basic premise of the Government's argument is that plaintiff's counsel essentially rolled the dice in relying on an ambiguous opinion. But the same criticism could be equally directed at the ALJ who also relied on a similarly vague opinion. A stronger argument for drawing an adverse inference perhaps would be presented if the ALJ had rejected *both* of Dr. Roh's opinions on the grounds of vagueness. However, as discussed above, the ALJ cherrypicked one of the two opinions and did not provide a rational basis for doing so.

The Court appreciates the time counsel took to file the supplemental briefs. However, the Court will not further analyze counsel's competing arguments because this Court is persuaded that no adverse inference should be drawn under the particular facts of this case. These issues can be addressed, as appropriate, in future cases. Still, if there is a broader albeit fairly obvious lesson to be drawn from these cases, it is that plaintiff's counsel should carefully consider the risk they are taking if they do not try to obtain a clear medical opinion at the administrative level, and they should be prepared to defend that choice when they later appear in this Court.

## CONCLUSION

For the above reasons, plaintiff's motion for summary judgment is granted, the Government's motion is denied, and the case is remanded for further proceedings. Plaintiff's motion to strike the Government's supplemental brief is denied as moot.

Date: October 16, 2019　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　　　　　　Iain D. Johnston
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge